Curia, per

O’Neall, J.
In this case, it can be hardly necessary to enter upon or pursue any extensive review of the cases decided, in this State, upon the great question involved in it, whether an apparent gift, accompanied by possession, shall be controlled, against subsequent creditors, by conditions, verbal or written, not made known to them. For it is in vain to deny that decisions have been made both ways.
In the time when Byrd vs. Ward, (more properly Word,) 4 McC. 228, was decided, an argument, in favor of sustaining such conditions, was, as I very well know, listened to with very little patience. In that case, the Court took up the facts, and upon them, without any error on the part of the Judge below, set aside a verdict found in favor of the parent, and in support of such qualification, without the slightest hesitation. In it, Judge Nott, speaking of the donee, said, “ He had, during that whole period, (several years) the sole and unqualified use and enjoyment of it, and was, to all intents and purposes, the ostensible owner. This analysis of the evidence leads to the inevitable conclusion, that, as to creditors, he must be regarded as such.” Yet, very soon after, the Court departed from the doctrine thus laid down, and began to favor the notion that all these cases must be considered as involving none other than a question of intention, and if the parent intended nothing beyond the preservation of the property from the improvidence of his son-in-law, such an arrangement might be sustained, although not known to the creditors. The many cases decided between 1830 and 1837, did not, however, sustain this view. Subsequent to that, was heard and decided the case of Archer vs. McFall. There, it is true, my brother Evans adhered to and gave utterance again, with all the weight of his great authority, to a principle, which he has always maintained, that this-question was one of fact, *174 turning upon the inquiries, whether the creditor knew that the debtor had the property in possession before he gave him credit, and whether he knew of the conditions accompanying his possession. But it is to be remarked that, in that case, the verdict was in favor of the creditor, and hence, therefore, there was nothing in it to make it authority on those questions. The case itself decided that, as against subsequent creditors, a slave put into the possession of a son-in-law, with conditions qualifying that possession, was his property and liable to his debts.
Thus stood the law, until Ford vs. Aiken, (1 Strob. 93). That case sustained the rights of the parent, where the possession of the slaves had long been in the son-in-law — and where the supposed qualification, by hiring, was unknown to the creditors. The Court held it was a pure question of fact and intention, fraudulent or not, for the jury. But it is to be remarked, that was a decision by three Judges, against the opinion of two, who dissented, and one member of the Court was absent. It cannot be regarded as authority, concluding us on this occasion.
In this case, we are about to commence to retrace our steps; and to endeavor to reach some point, from which we can arrest the tendency of jury trials to establish, instead of putting down, fraudulent conveyances. To do so, we must get hack to first principles.
On the marriage of a daughter, or even after marriage, if a slave be put in the possession of the son-in-law, (unless for some temporary purpose) the law raises the presumption of a gift. This is not exactly irrebuttible; but so far as credilors are concerned, it must- be qualified, if qualified at all, by something equally as notorious as the possession. In general, property intended to be preserved from the marital rights of the husband, and their consequences, can only be by a marriage settlement, regularly executed and legally recorded. But it is said, this is not intended to be preserved as the wife’s property: it is the father’s, notwithstanding he has parted with the possession. This, between donor and donee, may be regulated by words, or by writing; but it is a wholly different matter as to creditors. *175 So far as they are concerned, a man is legally presumed to be the owner of every thing in his possession, which is not qualified by some instrument legally recorded, or made known to them, or by a qualification resting in words brought home to them. When property is thus regulated, society is on an equality. The creditor, debtor and third persons, are all alike protected. The law is then as it should be, the minister of equality.
The true notion is as well expressed in the dissenting opinion in Ford vs. Aiken, (1 Strob. 102,) as I am now able to express it. Speaking of the case of Archer vs. McFall, in its result more than in the words of the opinion, it was said — “ that case placed the law right, in holding that the possession of a slave by a son-in-law was’ in law a gift, and any thing which would make it less, must be made known to persons who gave credit subsequent to the possession.” This principle we are willing to adopt, as a rule for all cases. Testing this case by it, it is plain the verdict cannot be supported. For there is nothing in the case which shews that the paper relied on in support of the plaintiff’s right was in any way known to the creditors, who were all subsequent to the possession of the slaves by the debtor.
But it is supposed that Steedman vs. McNeill, (1 Hill, 194,) is in our way in setting aside this verdict. That case, however, did not decide any thing beyond that the deed under which the donee, the daughter, held, did not give her any estate upon which the rights of the husband could attach; and, therefore, that the slaves were not liable to execution for his debts. The rights of creditors under his possession were not drawn in question.
The motion for a new trial is granted.
Wakdlaw, Frost, Withers and Whitner, JJ. concurred.

) 1 HiU, 16. (2) 1 Smith Lead. Cases, 1.